JACOB ALPERT ET AL. *vs.* NAZAIRE PELOQUIN.

First Judicial District, Hartford, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

A written lease for one year of premises which were to be equipped by the lessees and used by them as a theater, provided that at the end of the year the lessor "is either to buy " the equipment at eighty-five per cent of its cost "or . . . give the lessee a further lease of said theater for the term of three years " at a prescribed rental. *Held* that the option thus created was exercisable by the lessor only, and that upon his election to buy the equipment at the end of the year, the lessees had no right to any other or further term.

An outstanding, unreversed judgment of a court of competent jurisdiction is not subject to collateral attack, in the absence of fraud, accident or mistake.

In the present case judgment was rendered against the lessees in an action of summary process, whereupon they sought to restrain the landlord from proceeding to dispossess them under such judgment, without having made any effort to reverse it upon writ of error, as provided by statute (§§ 5852, 6122 and 6128). *Held* that the

statutory method afforded the lessees an adequate remedy at law, and that the correctness of the summary process judgment could be challenged only upon a writ of error.

Submitted on briefs October 4th—decided October 19th, 1921.

SUIT for an injunction to restrain the defendant from taking any action under a judgment of summary process to dispossess the plaintiffs of certain leased premises, brought to the Superior Court in Windham County, where a demurrer to the complaint was sustained, the complaint held insufficient, and judgment rendered for the defendant (*Webb, J.*), from which the plaintiffs appealed. *No error.*

*Charles L. Torrey* and *Mahlon H. Geissler*, for the appellants (plaintiffs).

*Charles E. Searls* and *John F. Carpenter*, for the appellee (defendant).

BURPEE, J.   The plaintiffs and the defendant executed a lease of a portion of a building owned by the defendant, to be used as a theater, for the term of one year ·from October 1st, 1919.   The defendant agreed to put in a pitched floor, and the plaintiffs to provide the necessary equipment for the theater.   This lease contained the following clause:—

"It is agreed that at the end of the present term of this lease said Peloquin is either to buy from said Alpert all personal property belonging to said Alpert and used in connection with said theater, at the rate of eighty-five per cent of the purchase price paid by said Alpert, or said Peloquin at the end of said year will give said Alpert a further lease of said theater for the term of three years at an annual rental of two thousand (2,000) dollars plus any increase in taxes and insurance over the present rate which said Peloquin may be compelled to pay."

On August 25th, 1920, the defendant wrote a letter to the plaintiffs, in which he quoted this part of the lease and stated that he chose to take over the theater on October 1st, 1920, and to buy from the plaintiffs all personal property belonging to them and used in connection with the theater, at the rate of eighty-five per cent of the purchase price, and asked for a list of such property with prices paid. The plaintiffs replied that, in accordance with the terms of the lease, they claimed and had decided to exercise their right to renew it for the term of three years. On September 15th, 1920, the defendant gave the plaintiffs the statutory notice to quit possession of the premises. On October 2d, 1920, the defendant began an action of summary process, in which, on October 21st, 1920, it was adjudged that the defendant recover possession of the premises in question. The plaintiffs, without making any attempt to get a reversal of this judgment, began this suit on October 22d, 1920, asking for an injunction to restrain the defendant "from doing anything to dispossess the plaintiffs of said premises," and a decree for the renewal of the lease for the further term of three years from October 1st, 1920. Their complaint alleges that the option of renewal is contained in that clause of the lease which is quoted above, that the plaintiffs have demanded a renewal of the lease "as provided " therein, that the defendant has refused to give a lease for a further term, but, on the contrary, has already brought against them an action of summary process founded on this lease and has obtained a judgment that they be dispossessed of the premises, and a copy of these proceedings is attached; and their complaint concludes with the statement that "the plaintiffs have no adequate remedy at law." To this complaint it is not surprising that the defendant demurred: first, because the provision relating to re-

newal, contained in the lease and set out in the complaint, gave to the defendant alone the option to renew or to buy for the stipulated price the plaintiffs' property put into the business, and the defendant had elected to do the latter; and second, because the plaintiffs having made no effort by the means provided by law to obtain a reversal of the judgment in the summary process action, the present suit is a collateral attack upon a valid, unreversed, and outstanding judgment of a court of competent jurisdiction.

The trial court sustained this demurrer on the first ground, and thereupon ordered judgment for the defendant. This action the plaintiffs assign as erroneous in their reasons of appeal.

The only question presented for the decision of this court is whether the lease, in the clause quoted and relied on by the plaintiffs, gives to them a right or privilege of a renewal of the lease upon their independent option and election. They concede that "at the expiration of the lease it is provided that Peloquin shall do one of two things"; and that is manifestly the only interpretation this provision of the lease will bear. But they contend that "they are the ones to choose which of the two courses is to be followed by" Peloquin. This interpretation this provision plainly will not bear. To the plaintiffs, no right nor privilege of any kind is given. The intention of the parties is clearly expressed. There is no doubt, ambiguity or uncertainty about the meaning of the language used. It is provided, as distinctly as words can state, that Peloquin shall buy or Peloquin shall give a further lease. Here is plainly a case of "option to renew or pay for improvements," of which it is said in 24 Cyc. 993: "Where the lessor covenants for a renewal or to pay for improvements, the option rests with him to do one or the other; the lessee cannot compel a renewal,

even though the lessee is not bound to accept either, but may elect to decline the lease and lose the value of the improvements. On the other hand, if the lessor elects to renew, the tenant cannot require payment for improvements." This was an "alternative stipulation," in which it is made optional with the lessor to renew the lease or to pay for the improvements; if the lessor elects to take the latter alternative, the lessee has no right to a renewal. 18 Amer. & Eng. Ency. of Law, 688; 2 Reeves on Real Property, p. 811; 1 Taylor on Landlord & Tenant (9th Ed.) § 335; 24 Cyc. 993.

We know of no conflicting decisions concerning such a provision. The authorities cited by the appellants all apply to cases in which the intention of the parties is doubtful, because of ambiguity or uncertainty in the language used. In this case there can be no reasonable interpretation of the meaning of plain English words except that the option rested with the lessor solely.

There was no error in sustaining the demurrer to the complaint in this action upon the first ground. It is well to add that there would have been no error in sustaining the demurrer on the second ground. If the plaintiffs were aggrieved by the rulings and judgment against them in the action of summary process, our practice provides a speedy and inexpensive means to obtain redress by writ of error. General Statutes, §§ 5852, 6122 and 6128. In the absence of fraud, accident or mistake, that process, not an injunction, must be used. *Carrington* v. *Holabird,* 17 Conn. 530, 537; *Dante* v. *Dante,* 93 Conn. 160, 163, 105 Atl. 353; 1 Beach on Injunctions, §§ 615, 617. It was not true, as alleged in the complaint, that the plaintiffs had no adequate remedy at law.

After the demurrer had been sustained and the defendant had thereupon moved for final judgment,

it was inevitable that the trial court should adjudge the complaint insufficient and order judgment that the defendant recover his costs.

There is no error.

In this opinion the other judges concurred.